(13 App. Div. 5.)

PAWLING et al. v. PAWLING et al.

(Supreme Court, Appellate Division, Third Department. January 12, 1897.)

NEW TRIAL—ORDER BY OTHER THAN TRIAL JUDGE—GRANTING AFTER AFFIRMANCE OF JUDGMENT.

An order granting a new trial on newly-discovered evidence will be reversed unless the appellate court is satisfied that a different result will be-

reached, where such order was made by a judge other than the trial judge, after affirmance of the original judgment by the court of appeals.

Appeal from special term, Montgomery county.

Action by Catherine E. Pawling, as administratrix of Henry Haskell Pawling, deceased, and others, against William M. Pawling and Margaret Pawling, individually and as administratrix of Henry Pawling, deceased, and others, for specific performance. From an order granting defendants' motion for a new trial on the ground of newly-discovered evidence, plaintiffs appeal. Reversed.

The motion was made while an appeal from the judgment in favor of the plaintiffs was pending, after argument, and awaiting decision in the court of appeals, but was not granted until that court had affirmed the judgment in favor of the plaintiffs. The motion was promptly made upon the discovery of the new evidence, but was not made before the trial judge.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Z. S. Westbrook, for appellants.
Edward P. White, for respondents.

LANDON, J. In view of the affirmance of the judgment by the court of appeals (44 N. E. 1127), we ought to be very sure that a new trial, if granted, would result in a judgment for the defendants. The newly-discovered evidence goes to a single material question, namely, the want of consideration for the agreement by Henry Pawling, the defendants' testator, who was the father of Henry Haskell Pawling, the plaintiff's intestate, to convey to the latter a certain lot of land in Amsterdam. The consideration alleged in the complaint and established by the judgment was the payment by the son of $2,865.63 in satisfaction of a mortgage upon the lot in question, upon the request of the father, and upon his promise to convey the lot to the son if the latter would pay the mortgage. The son did pay it, and the father repeatedly promised to convey the lot to him, and the deed for that purpose was submitted to and approved by him, and he promised to execute it when he could procure the presence of an officer to take his acknowledgment; but, being in very feeble health, he soon after died, without having executed the deed. The trial court found sufficient equities to authorize specific performance. The defense was that, as between the father and son, the mortgage was a debt of the son, and therefore its payment by him was the payment of his own debt, and hence the agreement by the father to convey the lot to him had no consideration to support it. The facts bearing upon the consideration, as found by the trial court, were, in substance, that prior to 1883 the father and son were partners in business, and joint owners of the lot in question and of other real estate; that they gave a mortgage upon the lot to Robert Stairs, in 1877, for $2,600; that in 1883 they dissolved partnership, and the son conveyed to his father his interest in the lot, subject to the Stairs mortgage, payment of which, as between the son and father, the father assumed; that the son continued the business; that in 1889, Stairs, the mortgagee, asked the father for payment of the mortgage,

and the father promised to pay it shortly; that the father then requested the son to pay it, and promised him to give him a deed of the lot, if he should do so; that the son relied upon the promise, did pay the mortgage, giving his check for $2,865.63 for the purpose. It was shown by the defendant upon the trial that after the dissolution of the partnership the son annually paid the interest upon the mortgage, and it was urged that he would not have done this if he was not also liable for the principal.

The newly-discovered evidence consists in the entries in the books of the son, made after the dissolution of the partnership, and in his annual balance sheets of his separate business, of this mortgage, and the amount thereof, as one of his individual liabilities. Of course, if, as between him and his father, it was his individual liability, no consideration existed for the agreement of the father to convey the lot to him. The plaintiff read affidavits in opposition to the effect that at the time of the dissolution of the partnership between the father and son the father agreed to assume the payment of this mortgage; also that the son gave his father, upon settlement, his note for $30,-090.93, which note he afterwards paid. Garrett E. Blauvelt, who was a bookkeeper of H. Pawling & Son, and after their dissolution the bookkeeper of H. Haskell Pawling, the son, and who is proposed as a new witness, makes affidavit that upon the dissolution "H. H. Pawling assumed and agreed to pay the debts and liabilities of the firm. At that time there was an account on the books, 'Mortgage payable of $2,600.' Robert Stairs held that mortgage. * * * After the dissolution, the accounts of H. H. Pawling were continued in the old books until they were filled, and then a new set of books was opened. This mortgage of Stairs was entered in the books of H. Pawling & Son as, 'Mortgage payable.' I made up several balance sheets for the firm, and this item was carried along from year to year as one of the liabilities. After the dissolution, I made balance sheets for H. Haskell Pawling, and this mortgage was included as one of the liabilities of H. Haskell Pawling. It was carried along as one of the liabilities so long as I remained there. * * * The balance sheets that I prepared for H. Haskell Pawling were submitted to him for his examination. He examined them, and never made any objection to the item of 'Mortgage payable.'" It is explained, argumentatively, that, after dissolution, the son entered this mortgage on his books in the same way as it was entered before the dissolution, and for the accommodation of his father, and not as his individual liability. It is apparent that, if a new trial should be granted, there would be a sharp contest over the question whether, upon the dissolution of the partnership, the father or the son assumed payment of the Stairs mortgage, and that the plaintiff would support the case made by him on the first trial by new material evidence. We are not at all confident that such new trial would result differently from the first one. We do not feel sure that justice requires a new trial. It is clear that the father intended to give his son a deed of the lot, and the question in controversy is whether his intention was based upon the son's payment of the father's debt, or upon love and affec-

tion. The motion for a new trial was not made before the trial judge, and therefore we are not assisted by his judgment, which in these motions is of peculiar value.

The order is reversed, with costs and disbursements, and the motion below denied, with $10 costs. All concur.